# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DONALD PATTERSON,

      Plaintiff,

                             Case No. 13-12895

      v.                      HON. TERRENCE G. BERG

DETROIT EDISON, et al.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS'
## <u>MOTION FOR JUDGMENT ON THE PLEADINGS (Dkt. 2)</u>

Plaintiff Donald Patterson is suing Detroit Edison, DTE Energy Corporate Services, LLC (collectively "DTE"),[1] and Utility Workers Union of America, Local 223 (the "Union") for race discrimination in violation of the Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2202, and for breach of the duty of fair representation due to Plaintiff under the terms of the Collective Bargaining Agreement (the "CBA") between DTE and the Union.

The matter is now before the Court on DTE's Motion for Judgment on the Pleadings, made pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 2).

---

[1] The Complaint does not differentiate between Detroit Edison and DTE Energy Corporate Services, LLC; Plaintiff refers to both defendants interchangeably as "DTE." In light of the fact that Detroit Edison and DTE Energy Corporates Services, LLC have jointly filed the motion that is the subject of this Order and because there is a third defendant (Utility Workers Union of America, Local 223) who may or may not have been served, the Court will adopt the collective noun used by Plaintiff in the Complaint and refer to the non-Union defendants as DTE.

Because the Court does not find that the resolution of this motion would benefit from oral argument, the motion will be decided based upon the parties' briefs.  *See* E.D. Mich. LR 7.1(f).

For the reasons stated below, DTE's Motion for Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART.

## I.      FACTUAL BACKGROUND

Plaintiff Donald Patterson is an African American male who was employed by DTE for approximately thirty years, from 1979 to 2010.  At all times relevant to this action, Plaintiff was also a member of Defendant Union, who served as the sole and exclusive bargaining representative for Plaintiff and other DTE employees. The wages, hours, and other terms and conditions of Plaintiff's employment were governed by the terms of the CBA.

In 1996, Plaintiff states that he "bid on a position as a WSC Shop Supplyman at a temporary pay grade of T8."  (Dkt. 1, Ex. 1, Compl. at ¶ 14).  In 1997, Plaintiff gave up a position at a permanent pay grade (T9) to accept the Shop Supplyman position, allegedly with the understanding that the position would be "benchmarked to a permanent pay grade" later that year.  (*Id*. at ¶ 15).  Thereafter, Plaintiff asserts that he repeatedly attempted to get his position benchmarked to a permanent pay grade for over 12 years, but was repeatedly unsuccessful.  (*Id*. at ¶¶ 16-17).  According to Plaintiff, DTE formally refused to benchmark his position at some point in 2006.  (*Id*. at ¶¶ 19-21).  Plaintiff also alleges that "virtually every TGrade employee in the WSC Shops Division had their pay grade benchmarked,"

that he was "treated differently than the other white employees who had their positions benchmarked to a permanent pay grade," and that he was "singled out and treated differently than his white co-workers due to his race and color. (*Id*. at ¶¶ 18, 22-24).

On December 7, 2009, pursuant to the CBA, Plaintiff filed a grievance alleging that DTE had violated the CBA by leaving his job classification at a temporary pay grade for over 12 years.

Plaintiff filed the instant suit on May 6, 2013.

DTE has now moved for judgment on the pleadings (Dkt. 2), arguing that all of Plaintiff's claims are time-barred.

## II.    LEGAL STANDARD

DTE has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which states that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A motion made under Rule 12(c) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).  *See*, *e.g.*, *Sensations Inc. v. City of Grand Rapids*, 526 F.3d 291, 295–96 (6th Cir. 2008).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  A motion brought pursuant to Rule 12(c) is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a

3

matter of law." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (internal citation and quotation marks omitted).

## III.   ANALYSIS

### A.   Hybrid Breach of Contract Claims

Plaintiff's breach of contract claim against Defendants is two-fold:  first, Plaintiff alleges that DTE breached his employment contract when it failed to "benchmark" his job classification from a "temporary" to a "permanent" pay grade from 1997 through 2009, and second he alleges that the Union breached its duty of fair representation to him for substantially similar reasons.  This combination of allegations forms what is commonly known as a "hybrid" claim, governed by Section 301 of the Labor Management Relations Act, 29 USC § 185 ("LMRA").  *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct.1048 (1976); *Winston v. Gen. Drivers, Warehousemen & Helpers, Local Union No. 89*, 93 F.3d 251, 254 (6th Cir. 1996).

The statute of limitations for hybrid Section 301 claims is six months.  *See Garrish v. Int'l Union*, 417 F.3d 590, 594 (6th Cir. 2005) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983)).  "Such a claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action."  *Wilson v. Int'l Bhd. Of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996); *see also McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987).  Plaintiff contends that he never discovered any information about the status of his grievance until July 27, 2011.  Taking this as true, the

breach of contract claims would need to have been filed—at the latest—by January 27, 2012, six months after the date that Plaintiff claims he learned DTE had denied his grievance.[2]  However, Plaintiff's lawsuit was not filed until May 6, 2013, more than 15 months beyond the applicable sixth-month statute of limitations period.

Because Plaintiff's breach of contract claims were filed after the expiration of the six-month statute of limitations period, they must be DISMISSED WITH PREJUDICE.[3]

## B.    Elliott-Larsen Civil Rights Act Claims

Plaintiff's complaint also contains a claim that Defendants violated the Elliott-Larsen Civil Rights Act, MCL § 37.2101, et seq. ("ELCRA").  DTE seeks judgment on this claim, again asserting that it is time-barred.  However, in order to evaluate this argument, the Court must first determine the applicable statute of limitations period.

---

[2] Although the DTE argues that Plaintiff's grievance was denied on December 7, 2009 (the date it was filed), Plaintiff contends that he never received any information about the status of his grievance until July 27, 2011.  Regardless of whether Plaintiff's grievance was actually denied on the date asserted by DTE, there is evidence in the record suggesting that Plaintiff, through the exercise of due diligence, may have been able to learn that his grievance had been denied much earlier.  In the exhibits attached to his Response, Plaintiff includes a July 27, 2011 email, purportedly sent by Chief Steward Russell Larabell, which states that Plaintiff's "Grievance was withdrawn by the union after the IBB [(Interest Based Bargaining)] meeting in which [Plaintiff] participated" (Dkt. 6, Ex. E).  Pursuant to Section 4.2 of the CBA, an IBB meeting shall be convened within 20 days of the receipt of the written grievance, and "if the grievance cannot be settled using the IBB process, the written grievance will be immediately assigned a grievance number.  Further, the copy of the grievance attached to Plaintiff's Response states, "Grievance No:  UNASSIGNED." (Dkt. 6, Ex. B).  This evidence certainly suggests that Plaintiff likely would have learned at the IBB meeting, some 20 days after the written grievance was filed, that his grievance was either withdrawn or denied.  At this time, however, the Court must accept Plaintiff's allegations as true, and he asserts that in fact he was not aware that the grievance had been denied until receiving the July 27, 2011 email.

[3] In his Response, Plaintiff made no attempt to refute DTE's arguments regarding his hybrid breach of contract claims.  Although Plaintiff's hybrid claims are, in fact, time barred, the Court would note that Plaintiff's lack of response alone would be a sufficient basis upon which to grant DTE's motion regarding the breach of contract claims.  *See Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008); *Resnick v. Patton*, 258 F. App'x 789, 790-91, n.1 (6th Cir. 2007).

5

*1. Labor Management Relations Act ("LMRA") Preemption*

In its Reply in support of its motion, DTE advanced the argument that Plaintiff's ELCRA claim should be preempted by Section 301 of the LMRA. If Plaintiff's ELCRA claim is subject to preemption, it would have needed to be filed within the same six-month limitations period as his hybrid breach of contract claims.

Employment-related claims based solely on state law may be preempted by Section 301 of the LMRA. *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc)*; see also Willett v. General Motors Corp.***,** 904 F. Supp. 612, 614 (E.D. Mich. 1995) (citing *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405-06 (6th Cir. 1988)). However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301…." *Ivery v. Chrysler Corp.*, 31 F. App'x 841, 843 (6th Cir. 2002) (quoting *Allis-Chalmers v. Lueck,* 471 U.S. 202, 211 (1985); *see also King v. Detroit Diesel Corp.*, Case No. 11-11895, 2012 WL 4475723, at *6 (E.D. Mich. Sept. 27, 2012) (Lawson, J.). "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other hand, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes." *Lingle,* 486 U.S. at 409-10; *see also Tisdale v. United Ass'n of Journeymen,* 25 F.3d 1308, 1312 (6th Cir.1994) ("It should be self-evident that if Congress did not preempt state civil rights actions by

6

operation of federal civil rights law it could not have meant to do so through federal labor law.")

Here, DTE argues that the adjudication of Plaintiff's ELCRA claim would require the Court to construe the terms of the CBA in order to determine whether Plaintiff experienced an "adverse employment action." This argument is unavailing. *See Wrobbel v. Asplundh Const. Corp.,* 549 F. Supp. 2d 868, 873-74 (E.D. Mich. 2008) (Rosen, J.); *Brown v. American Axle & Mfg., Inc.*, 396 F. Supp. 2d 810, 813-14 (E.D. Mich. 2005) (Duggan, J.). Properly understood, Plaintiff is alleging that he was treated differently than other, non-African American employees when he was repeatedly—over the course of 12 years—denied benchmarking to a permanent pay grade. Although it is true that DTE would be likely to raise the terms of the CBA as a defense to Plaintiff's ELCRA claim, reliance upon the CBA as a defense to a civil rights complaint is insufficient to invoke preemption. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990) (citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 399 (1987)). Regardless of whether DTE's alleged conduct was permitted under the terms of the CBA, Plaintiff asserts that he was one of the only TGrade employees to not be benchmarked, and that the reason for this treatment was because of his race. This allegation states a claim for a violation of Michigan's Elliott-Larsen Civil Rights Act which is sufficiently independent of the CBA so as to avoid preemption by Section 301 of the LMRA.

7

*2.  Statute of Limitations for ELCRA Claims*

Having concluded that Plaintiff's ELCRA claim is not preempted by the

LMRA, the Court must now consider whether the claim is timely under the

ELCRA's statute of limitations.

The statute of limitations for ELCRA claims is three years.  MCL

600.5805(10); *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 472 Mich. 263,

278, 696 N.W.2d 646, 655 (2005).  As stated earlier, Plaintiff asserts that his cause

of action accrued on or about July 27, 2011, when "he was informed that the

Defendants Detroit Edison and DTE was[sic] discriminating against black

employees, by its classifications and allowing white employees to be paid at higher

grades, when both were performing the same duties."  (Dkt. 6, Pl. Resp., 7).

However, under MCL 600.5827, an ELCRA claim accrues on the date the alleged

discriminatory act occurred.  *See Joliet v. Pitoniak*, 475 Mich. 30, 32, 715 N.W.2d 60

(2006) (holding that absent an allegation of discriminatory discharge, a claim does

not accrue on the last day of employment, but rather on the date the alleged

discriminatory act occurred) (citing *Magee v. DaimlerChrysler Corp.*, 472 Mich. 108,

109, 693 N.W.2d 166 (2005)); *see also Trentadue v. Buckler Automatic Lawn*

*Sprinkler Co.*, 479 Mich. 378, 389, 392-393, 738 N.W.2d 664 (2007) (rejecting

assertion that "a claim does not accrue until a plaintiff knows, or objectively should

know, that he has a cause of action and can allege it in a proper complaint").

Taken as a whole, the complaint and the exhibits attached to Plaintiff's

Response to the motion for judgment on the pleadings suggest that the most-

recently alleged act of possible discrimination took place on the date of the denial/withdrawal of Plaintiff's grievance challenging the failure/refusal to benchmark his job classification. While Plaintiff states he did not learn that his grievance had been denied until July 27, 2011, he does not allege a specific date upon which the denial *occurred*. And, as stated previously, the case law provides that the relevant date is the date the act of discrimination occurred, rather than the date the Plaintiff learned of it. Thus, even viewing the facts in the light most favorable to Plaintiff, the allegations are currently insufficient to support the claim that a discriminatory act occurred within the three-year period immediately prior to the filing of the instant action; i.e., between May 6, 2010 and May 6, 2013. Because the complaint fails to specify any date within the three-year limitations period on which a discriminatory act allegedly occurred, Plaintiff's ELCRA claim must be DISMISSED WITHOUT PREJUDICE.

## IV.    CONCLUSION

Therefore, for the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (Dkt. 2) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's hybrid breach of contract claims are **DISMISSED WITH PREJUDICE**. Plaintiff's ELCRA claim is **DISMISSED WITHOUT PREJUDICE**.

Further, Plaintiff has 30 days in which to file an amended complaint containing allegations sufficient to show that his ELCRA claim is timely. Plaintiff is cautioned that the failure to file such an amended complaint will result in the

automatic conversion of the dismissal of the ELCRA claim from one without

prejudice to one with prejudice.

**SO ORDERED**.

Dated:  March 17, 2014                    s/Terrence G. Berg
                                          TERRENCE G. BERG
                                          UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically submitted on March 17, 2014, using the CM/ECF system, which will send notification to the parties.

                                          s/H. Monda for A. Chubb
                                          Case Manager